# United States Court of Appeals
## For the First Circuit

No. 05-1951

JOSEFINA RIVERA RODRÍGUEZ; JORGE APONTE RODRÍGUEZ;
CONJUGAL PARTNERSHIP APONTE RIVERA,

Plaintiffs, Appellants,

v.

SEARS ROEBUCK DE PUERTO RICO, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, Senior U.S. District Judge]

Before
Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Juan Rafael González Muñoz, with whom González Muñoz & Vicéns Sánchez, Carlos M. Vergne, and Law Offices of Carlos M. Vergne were on brief, for appellants.
Rafael E. Aquiló-Vélez, with whom Anabel Rodríguez-Alonso and Schuster Usera & Aquiló LLP were on brief, for appellees.

December 23, 2005

**LYNCH**, **Circuit Judge**. Josefina Rivera Rodríguez and her husband appeal from entry of summary judgment in favor of her former employer, Sears Roebuck de Puerto Rico, Inc. ("Sears"), on her age discrimination claims under federal and Puerto Rican law. See Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq.; P.R. Laws Ann. tit. 29, § 146; P.R. Laws Ann. tit. 29, § 194a(a).[1]

Rivera worked for Sears from 1964 until her voluntary retirement in 1998. She had been promoted in Puerto Rico from Sales Manager to District Merchant in 1993, when she was 50 years old. Rivera voluntarily left Sears after she was not hired into a Buyer position she had sought in 1997. When Rivera announced her decision to retire, various Sears personnel tried to talk her out of it. These included her supervisor and the human resources manager.

This is not the usual claim by a former employee that her employment was terminated due to discrimination. The claim is rather that when Rivera sought reemployment with Sears, she was not hired for two positions, a District Merchant position in late 2000 and a Buyer position in the summer of 2002. We affirm, taking all

---

[1] Rivera's husband and the conjugal partnership brought derivative claims under Puerto Rican law. As the parties agree and the district court held, if Rivera's claims of discrimination and retaliation fail, these derivative claims must fail as well. See Marcano-Rivera v. Pueblo Int'l Inc., 232 F.3d 245, 257-58 & n.7 (1st Cir. 2000).

facts and inferences in plaintiff's favor and engaging in de novo review. Nadherny v. Roseland Prop. Co., 390 F.3d 44, 48 (1st Cir. 2004).

The standards of persuasion and proof which plaintiff must meet are the subject of skirmishing in the briefs. Defendants say the standard model of inferential proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), governs. The plaintiffs argue that in their opposition to summary judgment, they chose to have the case treated as a mixed motive case. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 101-02 (2003); Price Waterhouse v. Hopkins, 490 U.S. 228, 244 (1989).

In the end, the question is whether a rational trier of fact could conclude that the reason, in whole or in part, that Rivera was not hired for either position was age discrimination, or that she was not hired for the second position due to retaliation for having filed an age discrimination claim. See Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003) ("[E]ven in mixed-motive cases, plaintiffs must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias."). In a thoughtful opinion, the district court did consider both the mixed motive and the McDonnell Douglas claims and concluded that Sears

-3-

would be entitled to summary judgment under either theory.  A brief recitation of the undisputed facts quickly shows why.

A. <u>District Merchant Position -- Fall 2000</u>

In August of 2000 Rivera, then aged 57, learned through a former Sears co-worker that Rebecca Ayala would be leaving her post as District Merchant at Sears.  Rivera called José Burgos, the vice president of merchandising and marketing at the Sears store, to ask about taking over this position.  Rivera says that Burgos responded: "Well, I have to talk to [James] Denny [then President of Sears] and call you back."  Rivera never heard back from Burgos regarding this position.  As was its policy, when Sears announced on October 16, 2000 that Ayala was leaving, it posted the position internally.  Sears hired an internal candidate, Luis Fernández, on November 30, 2000.

It was only after the District Merchant position was filled in November of 2000 that Rivera sent a letter requesting consideration for hiring, on December 12, 2000, to James Denny, then President of Sears.  Thus, the job opening she claims to have been discriminatorily denied did not exist at the time of her August conversation with Burgos and was filled by the time of her letter of December 12 to Denny.

Rivera, as a former employee of Sears, confirmed that the company did in fact post positions internally as a matter of course.  A document in evidence, entitled "The Employment Process

-4-

for Salaried Positions," describes the first step as "Post[ing] job internally." Under the policy, the company looks for external candidates only if a decision is made that such recruitment is needed, in which case both internal and external candidates are considered. Thus, Rivera would have to show that Sears addressed the question of whether external candidates were needed and that the decision they were not needed was motivated by age discrimination against her. Rivera offered no evidence to prove either point.

Rivera suggests that as a former employee she was entitled to treatment as though she were an internal candidate. However, Sears' Human Resources Guide for Managers (which did not purport to give rights to employees in any event) merely says: "Retirees and other former associates may be reemployed if their prior work record was satisfactory." The language disqualifies former employees with unsatisfactory work records from reemployment and does no more. It certainly does not say former employees are to be treated as internal candidates.

Rivera also attacks Sears' explanation that there was a hiring freeze during this period as to external hires. She says that Sears never informed her of this hiring freeze when she did not get the District Merchant job. She relies on the failure of Sears to produce any written documentation to substantiate its claim of a hiring freeze. Sears instead relied solely on the

deposition testimony of its employees to support the hiring freeze claim. This was a risky strategy for Sears, a national company with documented personnel policies, and could well have raised a disputed issue of fact. See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1123 (9th Cir. 2004) ("[T]he fact that a company the size of GTE does not have a memorandum, meeting notes, or other evidence of this hiring freeze or the financial difficulties that allegedly spurred the hiring freeze provides circumstantial evidence that the hiring freeze did not in fact exist."). Here, though, even if the existence of a hiring freeze on external candidates were disputed, the issue is not material. No dispute is raised about the fact that the vacancy was posted internally and a qualified internal candidate had been selected before receipt of plaintiff's December letter. There is no evidence of discrimination in the hiring for the District Merchant job that could raise any possibility of inference of prohibited age discrimination under these circumstances.

B.      Buyer Position -- Summer 2002

The second position Rivera sought was a Buyer position which came open in the summer of 2002, when the incumbent, Lissette Beltran, gave notice of her resignation. Rivera had been found to be unqualified to fill the same position in 1997. By the time of her application for the Buyer position, Rivera had filed a complaint against Sears in 2001 alleging age discrimination for the

failure to hire her for the District Merchant position. Rivera did not receive the Buyer position; on August 15, 2002, Frieda Morales was hired instead.

Rivera claims that the failure to hire her for the Buyer position in the summer of 2002 was motivated by both age discrimination and retaliation against her for bringing suit against Sears. Rivera does not argue that she was as qualified or more qualified than Morales for the position; nor would the evidence support such an argument. Rather, her argument is that but for the company's conclusion that she was not qualified for the Buyer position (which was motivated by age discrimination or retaliation), she would have gotten the Buyer position and Morales' application would never have been considered. The factual underpinning for that argument is simply missing. Plaintiff applied for the job on June 30, 2002. Morales applied for the job the next day. The job application period was open until July 29. Both applicants were considered for the position. So Morales would have been considered in any event. Further, Sears considered Rivera to be unqualified, just as she had been in 1997. Sears concluded that five years later she was no more qualified for the Buyer position, having had no relevant experience in the interim which would have improved her qualifications.

Against this very strong evidence that it was not discriminatory for the company to conclude that since she was not

qualified in 1997, then she was not qualified in 2002, plaintiff offers only two arguments. Neither suffices to forestall summary judgment. The first is that Fernández, who hired Morales in the summer of 2002, was notified by the HR department that Rivera had filed a discrimination complaint. Since Sears put on no evidence as to why this was so, Rivera argues that this notice to Fernández is sufficient to permit an inference of retaliation against her. Even taking reasonable inferences in her favor, the evidence Rivera points to, the deposition testimony of Fernández, does not support her contention:

> Q: When [Bob Molina, Sears' District Operations Manager] mentioned [Rivera] for the first time, uh, did he ask you whether you knew her or . . .?
>
> A [Fernández]: The first time that he mentioned Rivera was in, because of the lawsuit. [W]e were in the process of finding a buyer . . . for my soft lines areas. I lost my buyer. [I] believe [Rivera] ha[d] sent some papers and some resume or something to the company . . . and he had mentioned . . . that I should consider her as part of the process.

Fernández also testified that he, in fact, did consider Rivera, but found her unqualified for the Buyer position. Nothing suggests that the lawsuit played a role in Fernández' hiring decision. Rivera does not contest that Morales is better qualified, and the evidence is clear she was in competition with Morales for the job.

In the end, Rivera's claim of discrimination rests almost entirely on a purported opinion expressed by the vice president of merchandising and marketing, Burgos, that Denny, who was Sears'

president until the summer of 2002, preferred to work with younger people.  Burgos' view was not based on any statement from Denny and no grounds have been offered as to admissibility.  More tellingly, by the time of the hiring for the Buyer position, Denny was no longer the company president and was not involved in the hiring decision.  The final interview of Morales was conducted by Gary Salvatore, who was Denny's replacement.  No evidence of discriminatory motive is offered against Salvatore.

Under these circumstances, no reasonable jury could have found that either hiring decision was motivated, even in part, by age discrimination; nor could it have found that the decision on the Buyer position in the summer of 2002 was motivated by retaliation against plaintiff for having filed an age discrimination complaint.[2]  Summary judgment was properly awarded to Sears.

**Affirmed**.  Costs are awarded to Sears.

---

[2] Rivera's claims under P.R. Laws Ann. tit. 29, § 146, also known as "Law 100," and P.R. Laws Ann. tit. 29, § 194a, also known as "Law 115," were also properly dismissed.  While Law 100 and the ADEA allocate the burdens of proof in different ways, see Alvarez-Fonseca v. Pepsi-Cola of P.R. Bottling Co., 152 F.3d 17, 27 (1st Cir. 1998), "the burden of proof on the ultimate issue of discrimination remains with the plaintiff" in both causes of action, id. at 28. See also Gonzales v. El Dia, Inc., 304 F.3d 63, 73 n.7 (1st Cir. 2002) ("[T]he merits of the age-discrimination claims asserted under the ADEA and Law 100 are coterminous." (citation omitted)).  As to Law 115, once the employer has provided a legitimate non-discriminatory reason, the ultimate burden of showing pretext still falls on the plaintiff. Compare P.R. Laws Ann. tit. 29, § 194a(c), with Ramírez Rodríguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 84 (1st Cir. 2005).